IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| BRENDA C. WHEELER, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>MICHAEL J. ASTRUE, )<br>Commissioner of Social Security, )<br>)<br>Defendant. ) | **MEMORANDUM OPINION<br>AND RECOMMENDATION**<br><br>1:07CV00526 |

Plaintiff, Brenda C. Wheeler, brought this action pursuant to Sections 205(g) and 1631(c)(3) of the Social Security Act, as amended (42 U.S.C. §§ 405(g) and 1383(c)(3)), to obtain judicial review of a final decision of the Commissioner of Social Security denying her claims for Disability Insurance Benefits and Supplemental Security Income under, respectively, Titles II and XVI of the Social Security Act (the "Act"). The parties have filed cross-motions for judgment, and the administrative record has been certified to the court for review.

**Procedural History**

This case stems from Plaintiff's applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) dated November 5, 2003 (protective filing date, October 22, 2003), alleging an onset of disability of September 25, 2002.[1]

---

[1] Plaintiff subsequently amended her alleged onset of disability to April 25, 2003. Tr. 449.

Tr. 68, 434-35.  The record indicates, however, that Plaintiff filed an earlier DIB application on June 13, 1994, which was denied on July 1, 1994, and apparently, not appealed.  See Tr. 26.  Plaintiff then filed both DIB and SSI applications in September 1995, which ultimately were denied by an administrative law judge (ALJ) after hearing.  See id.  Plaintiff challenged the ALJ's decision, and the Appeals Council remanded her case to the ALJ.  The ALJ reopened Plaintiff's 1994 application and awarded her a closed period of benefits encompassing the period from April 29, 1994, through January 15, 1996.  See Tr. 26-32.

Plaintiff next applied for benefits in March 2003, which applications were denied at the initial level; Plaintiff did not further appeal.  See Tr. 33, 65, 430, 442.  Plaintiff's November 2003 applications were also denied both initially and upon reconsideration, Tr. 34-35, 443-44, but as with her 1995 applications, Plaintiff requested a de novo ALJ hearing, Tr. 49.  Present at the hearing, held on June 15, 2005, were Plaintiff, her attorney, and a vocational expert.  Tr. 445.

By decision dated December 16, 2005, the ALJ determined that Plaintiff was not disabled within the meaning of the Act.  Tr. 12.  On June 21, 2007, the Appeals Council denied Plaintiff's request for review of the ALJ's decision, Tr. 5, thereby making the ALJ's determination the Commissioner's final decision for purposes of judicial review.

In deciding that Plaintiff is not entitled to benefits, the ALJ made the following findings, which have been adopted by the Commissioner:

2

1. The claimant met the disability insured status requirements of the Act on April 25, 2003, her amended alleged disability onset date, and she continues to meet them at least through the date of this decision.

2. The claimant has not engaged in any substantial gainful activity since her amended alleged disability onset date.

3. The medical evidence establishes that the claimant has mild coronary artery disease, degenerative disc disease of the lumbar spine, hypertension, irritable bowel syndrome, anxiety, depression, and history of polysubstance abuse. These impairments are considered to be "severe" under the Regulations. Her history of left hip pain, gastrointestinal reflux disorder, and asthma are "non-severe" impairments.

4. The medical evidence does not show the claimant has an impairment or combination of impairments that meets or medically equals the requirements for any impairment listed in the Listing of Impairments contained in Appendix 1, Subpart P, Regulations No. 4.

5. The claimant's statements concerning her impairments, pain, and functional limitations are not fully credible in light of the objective medical findings contained in the record by treating and consulting physicians, and based on the claimant's own description of her wide variety of daily activities and lifestyle (20 CFR §§404.1529, 416.929).

6. The claimant retains the residual functional capacity to perform the physical exertion and nonexertional requirements of simple, routine, repetitive, medium work with limited social interaction with others (20 CFR §§404.1545, 416.945).

7. The claimant's impairments prevent her from performing her past relevant work.

8. The claimant's residual functional capacity for the full range of medium work is reduced by the additional nonexertional limitations stated in Finding No. 6.

9. The claimant is defined as "advanced age" under the Regulations (20 CFR §§404.1563, 416.963).

10. The claimant has a bachelor's degree in nursing (20 CFR §§404.1564, 416.964).

11. The issue of transferability of work skills is not material in view of the claimant's mental residual functional capacity (20 CFR §§404.1568, 416.968).

12. Based on an exertional capacity for medium work and the claimant's age, education, and work background, Grid Rule 203.15, Table No. 3 of Appendix 2, Subpart P, Regulations No. 4 directs a conclusion of "not disabled."

13. Although additional nonexertional limitations do not allow the claimant to perform all of the requirements of medium work, using Rule 203.15 as a framework for decisionmaking, there is a significant number of jobs existing in the national economy to which she can adapt and perform. Examples of such jobs are marker, packaging line attendant, and filler block inserter.

14. The claimant was not under a "disability," as defined in the Social Security Act and Regulations, at any time through the date of this decision (20 CFR §§404.1520(f), 416.920(f)).

Tr. 21-22.

**Analysis**

In her brief before the court, Plaintiff argues that the Commissioner's findings are in error because the ALJ failed to discuss the opinion of the consultative examiner that her pain significantly impacts her ability to stand and walk. The Commissioner contends otherwise and urges that substantial evidence supports the determination that Plaintiff was not disabled.

4

Scope of Review

The Act provides that, for "eligible"[2] individuals, benefits shall be available to those who are "under a disability," defined in the Act as the inability:

> to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]

42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A).[3]

To facilitate a uniform and efficient processing of disability claims, the Social Security Administration, by regulation, has reduced the statutory definition of "disability" to a series of five sequential questions. An examiner must determine whether the claimant (1) is engaged in substantial gainful activity, (2) has a severe impairment, (3) has an impairment which equals an illness contained in the Act's listing of impairments, (4) has an impairment which prevents past relevant work, and (5) has an impairment which prevents him from doing any other work. Section 404.1520.

The scope of judicial review by the federal courts in disability cases is narrowly tailored to determine whether the findings of the Commissioner are supported by

---

[2] Eligibility requirements for DIB are found at 42 U.S.C. § 423(a)(1), and for SSI at 42 U.S.C. § 1382(a).

[3] The regulations applying these sections are contained in different parts of Title 20 of the Code of Federal Regulations (C.F.R.). Part 404 of Title 20 applies to federal old-age, survivors, and disability insurance, and Part 416 applies to supplemental security income for the aged, blind, and disabled. Since the relevant portions of the two sets of regulations are identical, the citations in this report will be limited to those found in Part 404.

substantial evidence and whether the correct law was applied. Richardson v. Perales, 402 U.S. 389 (1971); Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005). Consequently, the Act precludes a de novo review of the evidence and requires the court to uphold the Commissioner's decision as long as it is supported by substantial evidence. See Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (citing Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996)). Substantial evidence is:

> "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'"

Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)).

Thus, it is the duty of this court to give careful scrutiny to the whole record to assure that there is a sound foundation for the Commissioner's findings, and that this conclusion is rational. Thomas v. Celebrezze, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed. Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972).

## The Issue

Plaintiff complains that the ALJ erred in not discussing in the decision a statement made by one of four consultative examiners. State agency medical consultants are highly qualified physicians who are also experts in Social Security disability evaluation; therefore, ALJs must consider their findings as opinion

6

evidence.  See section 404.1527(f).  But as with other opinions, the weight such opinions are accorded is determined by whether they are supported by clinical evidence or are consistent with other substantial evidence.  See Craig v. Chater, 76 F.3d 585, 590 (4th Cir. 1996).

Plaintiff correctly notes that the ALJ failed to discuss the observation of Dr. Alan Rosenbloom that Plaintiff "seems to be able to sit and stand, although the latter not for long periods of time."  Tr. 252.  Yet this statement conflicts with the doctor's objective findings.  Plaintiff exhibited lumbosacral spinal tenderness, but she retained full range of motion of her thoracolumbar spine and of all her joints. Tr. 251-52.  Her gait was normal and, although she could not stand on her heels and toes, she could tandem walk.[4]  Tr. 252.

Plaintiff's coordination and motor and sensory abilities were all grossly intact. Her deep tendon reflexes were symmetric and straight leg raise testing was negative.  Dr. Rosenbloom even noted that, although Plaintiff complained of "quite severe" back pain, "*in fact, she moves around the examination room fairly well*."  Id. Also, Plaintiff told the doctor that she was taking neither pain nor anti-inflammatory medications.  Tr. 251.  Cf. Singh v. Apfel, 222 F.3d 448, 453 (8th Cir. 2000) (a claimant's allegations of disabling pain may be discredited if he has taken only occasional pain medications); Shively v. Heckler, 739 F.2d 987, 990 (4th Cir. 1984)

---

[4] Interestingly, during a second consultative examination performed seven months later, Plaintiff could walk on her heels and toes but could not tandem walk "reasonably well."  Tr. 274.

7

(the weakness of pain medication is a factor to be considered in assessing the severity of a claimant's pain). A state agency medical expert subsequently used Dr. Rosenbloom's report to determine that Plaintiff could, as the ALJ found, perform medium exertional work,[5] and a second expert affirmed this finding. See Tr. 315, 342-49. And, partly based on this assessment, Plaintiff's March 2003 applications were denied. See Tr. 33, 442.

Other records also conflict with Dr. Rosenbloom's statement. The doctor's examination occurred secondary to Plaintiff's March 2003 disability application, which she explained was filed due to irritable bowel syndrome.[6] See Tr. 289. The state agency worker who facilitated her application observed that Plaintiff demonstrated no difficulties in her physical functioning. Tr. 99. Three months after Dr. Rosenbloom's exam, a magnetic resonance image showed only moderate facet degenerative disease at one level, with merely mild dessication and bulging and no herniation or stenosis. Tr. 309. The canal and foramina appeared widely patent.

Further, Plaintiff underwent a second physical consultative examination seven months later. See Tr. 272-74. Dr. Stephen Miller also found that Plaintiff's

---

[5] The Commissioner provides that "[a] full range of medium work requires standing or walking, off and on, for a total of approximately 6 hours in an 8-hour workday." Social Security Ruling 83-10, 1983-1991 Soc. Sec. Rep. Serv. 24, 31 (West 1992); see also section 404.1567(c).

[6] In fact, Plaintiff admitted that she last worked in September 2002 after losing her nursing license pursuant to a conviction for driving while intoxicated, Tr. 247; she did not disclose this information to Dr. Rosenbloom, see Tr. 251.

8

lumbosacral spine had full range of motion and that her straight leg raise testing was negative. Tr. 273. Her lower extremities still had full range of motion, with no demonstrable weakness. Tr. 274.

As before, Plaintiff's deep tendon reflexes were symmetric, and she exhibited neither motor nor sensory deficits. Plaintiff was now able to walk on her heels and toes, although this time she was not able to tandem walk "reasonably well."[7] Id. And Plaintiff's positive objective findings were consistent throughout her medical records. See, e.g., Tr. 368, 370, 372, 376, 377, 379. A third agency expert opined that Plaintiff could perform medium work. Tr. 335. The ALJ expressly relied on this opinion in determining Plaintiff's physical residual functional capacity (RFC). See Tr. 19.

Moreover, as pointed out by the ALJ, see Tr. 20, Plaintiff's own statements were inconsistent with Dr. Rosenbloom's assessment. Plaintiff was independent in caring for her personal needs. See Tr. 113, 117, 126. She cooked and cleaned daily. Tr. 111, 117, 127. Every week, Plaintiff attended church, did laundry, shopped, vacuumed, and mopped. Tr. 117-18, 121, 128.

Plaintiff regularly visited with relatives and neighbors, and occasionally dined out with family members. Tr. 119, 121, 129, 457. She cared for plants and did some gardening. Tr. 459. Plaintiff even took on the care of a pet, and could travel. See

---

[7] Although Plaintiff reported to Dr. Rosenbloom that she experienced pain while sitting, Tr. 251, Dr. Miller remarked, "She had no difficulty doing a prolonged sitting for this interview," Tr. 274.

9

Tr. 144, 457. In particular, as to her ability to walk, Plaintiff said that she walked in her neighborhood, walked to the store, sometimes walked to Wal-Mart for exercise, and walked to the bus line in order to take the bus. Tr. 117, 456.

Plaintiff argues that the Commissioner's ruling orders that, "[i]f the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." Social Security Ruling 96-8p, 61 Fed. Reg. 34474-01, 34478. Even assuming that the ALJ erred in failing to address Dr. Rosenbloom's statement, the court cannot see how Plaintiff was prejudiced by this failure, and "will not remand '[a]bsent unfairness or prejudice.'" See Samons v. Astrue, 497 F.3d 813, 822 (8th Cir. 2007). The ALJ explained that she had reached the RFC decision "[a]fter careful consideration of the entire record," expressly discussing Plaintiff's "wide variety of activities of daily living" and relying on the opinions of the state agency experts. Tr. 19-20. Thus, the ALJ provided substantial evidence to support her decision. As Plaintiff has pointed to no indication that the ALJ's discussion of Dr. Rosenbloom's statement would have altered the ALJ's decision, the court is inclined to find that the ALJ's oversight is merely harmless error. See Senne v. Apfel, 198 F.3d 1065, 1067 (8th Cir. 1999) (the court will not set aside an administrative finding based on an "arguable deficiency in opinion-writing technique" when it is unlikely to have affected the outcome); Fisher v. Bowen, 869 F.2d 1055, 1057 (7th Cir. 1989) (refusing to remand where there was no "reason to believe that the remand might lead to a different result").

**Conclusion and Recommendation**

For the foregoing reasons, the decision of the Commissioner is supported by substantial evidence and the correct legal principles were applied. Therefore, **IT IS RECOMMENDED** that the Commissioner's decision finding no disability be **AFFIRMED**. To this extent, Plaintiff's motion for summary judgment (pleading no. 10) seeking a reversal of the Commissioner's decision should be **DENIED**, Defendant's motion for judgment on the pleadings (pleading no. 12) should be **GRANTED**, and this action should be **DISMISSED** with prejudice.

/s/ Wallace W. Dixon

WALLACE W. DIXON
United States Magistrate Judge

September 15, 2008